GREGORIO CEREZO, Plaintiff and Appellee, *v.* MANUEL RIVERA, Defendant and Appellant.

No. 3664. Argued December 3, 1925.—Decided June 2, 1926.

*Alberto García Ducós, Juan B. Soto* and *Sebastián García Díaz* for the appellant. *García Méndez & García Méndez* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

A judgment in favor of plaintiff for the recovery of a house valued at $350.00 together with the sum of $120.00 as damages arising out of the loss of rents and profits was based by the trial judge upon the following statement:

"On September 18, at two o'clock, this case, which is an appeal from the Municipal Court of Aguadilla, was heard. The Municipal Court of Aguadilla found for the plaintiff. The evidence of both parties was written and oral. Neither plaintiff nor defendant has an inscribed title in the Registry of Property, and, consequently, there is no question here that bears any relation to the Mortgage Law.

"Plaintiff introduced written evidence to show the death of Gregoria Cerezo and the birth of plaintiff and his inscription as such son of Gregoria Cerezo, which was also shown by adequate oral evidence. This is sufficient to show the character as heir of a plaintiff who sues as such. Soriano et al. v. Rexach, 23 P.R.R. 531; Morales et al. v. Landrau et al., 15 P.R.R. 761; and the repeated jurisprudence of the Supreme Court is to that effect. Plaintiff also introduced oral evidence consisting of the testimony of witnesses Bernardino Jiménez, Francisca Sánchez, Gerardo Cabán, and that of plaintiff Gregorio Cerezo. With this evidence that in our judgment was absolutely clear, it was satisfactorily shown that Gregorio Cerezo is the only and universal heir of Gregoria Cerezo, who died in Aguadilla on Dec. 8, 1872; that Gregorio Cerezo was born on that same date for his mother died while delivering, and that since his birth plaintiff always lived in the house that is the object of the present revendication, that he remained living there, together with his uncle Agustín Cerezo; that the latter became gravely sick twenty-three years ago, and that

his neighbors Juan Roldán and Eustaquia Cabán went to attend him; that said Agustín Cerezo died a little later, that is, about twenty-three years ago, and Gregorio Cerezo remained in the house, and due to his tolerance, said Juan Roldán and Eustaquia Cabán remained there also; that later, Gregorio Cerezo, who was a weak, dull and ingenuous fellow, was put out of the house by said Juan Roldán and Eustaquia Cabán, in spite of their acknowledgment that plaintiff was the owner of the property, as appears from the testimony of Gerardo Cabán, who was brother of Eustaquia Cabán; that the only owner of the house is plaintiff, and that the preceding owner of it was his mother Gregoria Cerezo; that his mother never sold the house, nor did plaintiff sell it; that no competent court deprived him of its use, and that defendant possesses that house against the will of plaintiff, deceitfully, and with no title to justify his possession. Convincing evidence was introduced to show the other averments of the complaint, and especially those referring to the damages caused to plaintiff by defendant.

"Defendant introduced written evidence consisting of two deeds executed in 1920 and 1922; by the first one Juan Roldán sells the property in question to his daughter Eulalia Roldán; and by the second one Eulalia Roldán, together with her husband Manuel Rivera, sells the house to Manuel Rivera Ortiz, her father-in-law. Defendant introduced also oral evidence to prove the averments of the answer, that is, that Roldán acquired the house by purchase from Rafael Ferrer; and he attempted to prove also that Ferrer bought it of Agustín Cerezo, the uncle of plaintiff. Defendant also introduced as evidence various receipts given by Rafael Ferrer and Magdalena Calderón, which showed that they collected certain amounts of money for the use of lots on which were found houses belonging to other persons. The court admitted these receipts in order to give them whatever probative force they might have, as it was the desire of defendant to show that the different persons that said defendant alleged to be the previous owners of the house, had paid the rent of a lot to said Ferrer and his wife, and that said lot was the one occupied by the house in question.

"The court has weighed all the evidence, and, taking in consideration the class of witnesses of both plaintiff and defendant, the way in which they testified, and other circumstances that never pass unnoticed to the serene analysis of an impartial judgment, has come to the conclusion that the preponderance of the evidence is in favor of defendant, and that, although it is nearly all oral it is clear, spontaneous and reasonable, with no contradictions whatsoever. On

the contrary, the evidence of defendant did not satisfy the court, it was full of contradictions, and was neither clear nor reasonable. Tending to show his title, defendant introduced two deeds. By one of these deeds he buys the house from his son and daughter-in-law, and by the other said Eulalia Roldán bought it from her father, Juan Roldán. Both deeds are of recent date, and the court has been unable to give them any value, not only due to the circumstances in which they were executed, but also because defendant did not introduce any other written evidence that would show a connection between Roldán and Rafael Ferrer, from whom it was alleged that he bought the house. The oral evidence on this point was also vague. and confused, and not at all convincing. The court understands that the execution of these deeds was for the purpose of showing an apparent title that could not be duly shown and connected with the previous owners; and defendant tried to 'show that Rafael Ferrer, who, it is said, sold to Juan Roldán by a private document, and who was not brought to testify, had bought it from Agustín Cerezo, uncle and foster father of plaintiff. This transaction was not only not shown, but it was completely denied by one of the principal witnesses of defendant, Ramón Ponce. There is a very important contradiction between the averments of the answer and the evidence of defendant. In his answer, second averment, defendant says: 'That he acquired said property by purchase that he made in 1922 from Eulalia Roldán, who possessed it for two years and bought it from Juan Roldán, the latter having owned it for over twenty years and bought it from Rafael Ferrer, who possessed it for over ten years.' According to this averment, Rafael Ferrer bought said house over thirty-four years ago, but it does not say from whom he bought it; and according to the evidence, defendant pretends to show that Ferrer bought it from Agustín Cerezo during the last days of his life, that is, about twenty-three years ago, as the evidence shows. There is no evidence to the effect that this action has prescribed. Defendant has not shown a possession for ten years in good faith and with just title, so he connot show it for twenty years; among present or absent persons; nor could defendant rely on the thirty-year prescription that section 1860 of the Civil Code provides, which section does not require title or good faith. In regard to the damages alleged by plaintiff, the evidence was clear, and was not controverted by defendant in any way. The case is, then, completely simple, there being no need of making great mental effort to decide it, and this court decides it in favor of the plaintiff and appellee, and this court renders judgment according to the prayer of the complaint.''

Appellant says that—

"First: The court erred in holding that plaintiff Gregorio Cerezo is the only son and universal heir of Gregoria Cerezo, former and sole previous owner of the house that is described in the complaint, and, consequently, its sole owner.

"Second: The court erred in sustaining the complaint, for it had no jurisdiction in this case."

█ The first proposition under the first specification of the assignment is that the court below erred in admitting over the objection of defendant a baptismal certificate or certified copy of an entry made in 1882 upon the church records issued by a parish priest and offered in evidence to show the date of birth and parentage of plaintiff.

Upon this point appellant says:

"It was a manifest error of the court to admit said document in evidence, because it was not shown by plaintiff that P. Juan de Gorotiza was legally authorized to issue certificates in Porto Rico, and, also, because it was not shown that the person who signed said document had sufficient legal capacity to issue a copy of the original that was supposed to be under his custody."

This question has been decided adversely to the contention of appellant in the recent cases of *Montañez* v. *Registrar*, 34 P.R.R. 743, *Silva* v. *Carbonell*, ante, page 224, and *Burgos* v. *Medina*, ante, page 485.

█ Next in support of the proposition that the district court erred in considering the baptismal certificate as evidence tending to establish the civil status of plaintiff as the natural son of Gregoria Cerezo appellant refers to a decision of the Supreme Court of Spain dated June 28, 1864, and to *Rivera* v. *Cámara*, 17 P.R.R. 503, and *Iturrino* v. *Iturrino*, 24 P.R.R. 439.

This question was likewise discussed and disposed of in the case of *Iturrino* v. *Iturrino*, distinguished in *Ex Parte Otero*, 27 P.R.R. 315.

In the instant case the godparents named in the baptismal certificate were Agustín Cerezo and Beatriz Ferrer. The

testimony of witnesses for defendant tends to corroborate and strengthen rather than to contradict the testimony for plaintiff to the effect that he was the natural son and only child of Gregoria Cerezo.

Another and the final proposition under the first specification is that the evidence fails sufficiently to deny the possibility of the existence of other heirs. It may be conceded that the testimony along this line is not so full and exhaustive as could be desired, but we are unable to say that it does not make out a prima facie case.

 The alleged want of jurisdiction in the district court is presented as the necessary result of a supposed lack of jurisdiction in the municipal court. The jurisdiction of the municipal court is assailed upon the ground that a special proceeding for a declaration of heirship can be instituted only in the district court.

The answer to this suggestion in the absence of anything more persuasive than a statement of the premise involved and of the conclusion sought to be drawn therefrom may be found in the fact that the present action is not primarily or in any general or ordinary sense a proceeding for a decree of heirship. The question of heirship herein was an incidental issue and was determined only as between plaintiff and defendant in order to establish a necessary link in plaintiff's chain of title.

The judgment appealed from must be affirmed.